Adam Siegel (SBN 238568)
**JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Telephone: (213) 689-0404
Email: Adam.Siegel@jacksonlewis.com

Mark Marsenovic (SBN 351658)
**JACKSON LEWIS P.C.**
400 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: (916) 341-0404
E-mail: Mark.Marsenovic@jacksonlewis.com

Attorneys for Defendant
C & C NORTH AMERICA, INC.
DBA COSENTINO NORTH AMERICA
(erroneously sued as C & C NORTH
AMERICA, INC.)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ELNORSE MCLEMORE III, an individual, on behalf of himself and others similarly situated,

Plaintiff,

vs.

C & C NORTH AMERICA, INC., a Delaware stock corporation; and DOES 1 through 50, inclusive,

Defendants.

CASE NO.:

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446 AND 1453**

[*Filed concurrently with Declarations of Mark Marsenovic and Natalia Agudo Calvo; Civil Case Cover Sheet; Corporate Disclosure Statement; and Notice of Interested Parties*]

State Complaint Filed: July 1, 2026

///

///

///

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEY(S) OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant C & C NORTH AMERICA, INC. DBA COSENTINO NORTH AMERICA (erroneously sued as C & C NORTH AMERICA, INC.) ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441(a)-(b), 1446 and 1453 and removes the above-entitled action to this Court from the Superior Court of California for the County of Solano on the grounds of diversity jurisdiction.

## I. INTRODUCTION

1. Defendant removes this case to this Court based on diversity jurisdiction. Complete diversity of citizenship exists between Plaintiff ELNORSE MCLEMORE III ("Plaintiff") and Defendant, and the amount in controversy, as alleged in Plaintiff's Complaint exceeds $5 Million under the Class Action Fairness Act ("CAFA"). As set forth below, jurisdiction within the District Court is proper on the grounds herein described and the action is timely and properly removed upon the filing of this Notice of Removal.

## II. VENUE AND STATEMENT OF JURISDICTION

2. This Action was filed in the Superior Court of the State of California in and for the County of Solano. Therefore, venue properly lies in the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 84(b), 1391 and 1441(a).

*3.* On July 1, 2026, Plaintiff filed a Complaint for Damages against Defendant in the Superior Court of the State of California for the County of Solano, entitled *ELNORSE MCLEMORE III, an individual, on behalf of himself and others similarly situated, Plaintiff, vs. C & C NORTH AMERICA, INC., a Delaware stock corporation; and DOES 1 through 50, inclusive, Defendants,* Case No. CU26-06701.

///

4. In the Complaint, Plaintiff alleges the following causes of action against Defendant on behalf of a putative class: (1) failure to pay minimum wages; (2) violation of Labor Code § 510 for alleged unpaid wages and overtime; (3) violation of Labor Code § 226.7 for failure to provide meal periods; (4) violation of Labor Code § 226.7 for for failure to authorize and permit rest periods; (5) violation of Labor Code § 226(a) for alleged failure to provide accurate wage statements; (6) violation of Labor Code § 204 for allegedly untimely final wages; (7) violation of Labor Code § 203 for allegedly untimely final wages; (8) violation of Labor Code § 221 for alleged improper wage deductions; (9) violation of Labor code § 2802 for alleged failure to reimburse necessary business expenses; and (10) violation of Bus. & Prof. Code § 17200 *et seq.* for alleged unfair competition. (See Plaintiff's Complaint, attached to the Declaration of Mark Marsenovic ("Marsenovic Decl."), as **Exhibit A** ("Compl.") ¶ 3.)

5. On July 16, 2026, Plaintiff personally served his Complaint on Defendant. (Marsenovic Decl. ¶ 4.)

6. On August 14, 2026, Defendant filed an Answer to the Complaint in the Solano County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses, which was also served on Plaintiff that same day. A true and correct copy of Defendant's Answer is attached as **Exhibit B** to Marsenovic Decl. (*Id.* at ¶ 5, Exhibit B.)

7. On information and belief, Defendant is the only viable named defendant in the State Court Action. See 28 U.S.C. § 1446(2)(A) ("[A]ll defendants who have been properly joined and served must join in and consent to the removal of the action."). All other defendants in the State Court Action have been sued under the fictitious names DOES 1 through 50. (Compl at 1.) In determining whether a civil action is removable based on diversity jurisdiction, the citizenship of defendants sued under fictitious names shall be disregarded. *See* 28 U.S.C. § 1441(b).

///

///

## III. <u>TIMELINESS OF REMOVAL</u>

8. This removal is timely because it is filed within thirty (30) days after service was effectuated of Plaintiff's Summons and Complaint, and it thus falls within the time period mandated by 28 U.S.C. § 1446(b). The deadline to file a removal must include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed Rules Civ Proc R 6.

9. Defendant was personally served the Complaint on July 16, 2026. (*See* Marsenovic Decl., ¶ 4, Exhibit A ("Compl.").)

10. Thirty (30) days from July 16, 2026, is Sunday, August 16, 2026.

11. This Notice of Removal has been filed within 30 days after Defendant was personally served with the Complaint and Summons. Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## IV. <u>REMOVAL UNDER CLASS ACTION FAIRNESS ACT</u>

12. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332, *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

13. In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

14. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in

the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from at least one of the Defendants. 28 U.S.C. §§ 1332(d) and 1453.

**A. <u>The Putative Class Contains More Than 100 Members</u>.**

15. Defendant's records identify in excess of 119 individuals who were employed by Defendant as hourly-paid employees in the state of California from July 1, 2022 through the filing of this Removal, and are thus part of Plaintiff's putative class. (Declaration of Natalia Agudo Calvo ("Calvo Decl."), ¶ 5.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B. <u>None of the Named Defendants Are Government Entities</u>.**

16. Defendant is not a State, a State official, or any other government entity. (Calvo Decl. at ¶ 3.)

**C. <u>All Served Defendants Consent to Removal</u>.**

17. To date, only Defendant has been served in this action. (Marsenovic Decl., ¶ 4.) Thus, all served defendants consent to removal of this action to the United States District Court for the Eastern District of California. 28 U.S.C. 1446(b)(2)(A).

**D. <u>Diversity Of Citizenship.</u>**

18. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the

minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

19. Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

20. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) (for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

21. Plaintiff is, and at all times relevant was, an individual residing in California. (Compl. ¶¶ 5-6.) Plaintiff filed his Complaint in the State of California for the County of Solano alleging that he "is now and/or at all times mentioned in this Complaint was a citizen of the State of California." (Compl. ¶ 5.) Additionally, Plaintiff's personnel file indicates that he resides in Solano, California and the paystubs that he received also indicate a home address of 1917 Grande Circle, Fairfield, CA 94533, which is located in the county of Solano. (Calvo Decl. at ¶ 4.) On that basis, Plaintiff is seeking the protections of the laws of this state. Thus, Plaintiff should properly be construed as a citizen of the State of California.

22. With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the

corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

23. At the time Plaintiff filed the Complaint and presently, Defendant has been at all times a Corporation organized under the laws of the state of Delaware, with its principal place of business and company headquarters located in Coral Gables, Florida. Coral Gables, Florida is where Defendant's high-level officers, including its Chief Executive Officer, direct, control, and coordinate the company's activities. (Calvo Decl., ¶ 3.) Accordingly, for purposes of removal, Defendant is a citizen of the States of Delaware and Florida and is not a citizen of the State of California. (*Id.* at ¶ 3.)

24. Plaintiff has also named as Defendants DOES 1 to 50. The presence of Doe defendants has no bearing on diversity with respect to removal. See 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.")

25. Thus, complete diversity of citizenship therefore exists between Plaintiff and Defendant within the meaning of 28 U.S.C. § 1332.

**E. The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.**[1]

26. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and

[1] Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendant also denies that any of Plaintiff's claims are appropriate for class treatment. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." *See* Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

27. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

28. Further, a removing party is "permitted to rely on 'a chain of reasoning that includes assumptions' to calculate the amount in controversy" and those reasonable assumptions "can be 'founded on the allegations of the complaint'" and "do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.* 131 F.4th 804, 806 (9th Cir. 2025) (*quoting Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint")). Only when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—is the removing party required to present evidence to support the assumptions made. *Perez*, 131 F.4th at 808 (citing *Ibarra*

*v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015)); see also *Rubel v. U.S. Nursing Corp.*, No. 1:23-cv-1664-JLT-CDB, 2025 U.S. Dist. LEXIS 54087 at *19-20 (E.D. Cal. Mar. 24, 2025).

29. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); see *Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

30. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held, like here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary

submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) (quoting *Dart*, 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

31. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See e.g.*, *Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); see

also *Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

32. Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the factual allegations and causes of action set forth in the Complaint[2] conservatively places an aggregate amount in controversy exceeding $5,000,000 exclusive of attorneys' fees, interest, and costs, as follows:

***1. Improper Meal Periods***

33. The Complaint alleges that Plaintiff and Class Members did not receive meal periods. (Compl. ¶¶ 64-73.) More specifically, the Complaint asserts that

34. As a matter of Defendants' established company policy, "Defendants failed to ***always comply*** with the meal period requirements . . . by ***failing to always provide*** the members of the Meal Period Class with a first and in some cases a second legally compliant meal period." (Compl. ¶ 71, emphasis.)

35. Defendant employed at least 119 non-exempt employees in California for a total of at least 9,077 workweeks from July 1, 2022 to the present (Calvo Decl. ¶ 5.) These non-exempt employees have an average hourly rate of $24.31. (Calvo Decl. ¶ 5.) Assuming five missed meal periods per workweek, Defendant would owe the putative

[2] *See e.g. Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

class approximately **<u>$1,103,309</u>** ($24.31 average hourly rate x 5 missed meal periods x 9,077 workweeks).

36. Thus, while Defendant completely denies Plaintiff is entitled to recover any meal period premiums, based on the allegations in the Complaint, it is plausible Plaintiff is seeking to recover meal period premiums for all shifts worked by Putative Class Members, which would place over **<u>$1,103,309</u>** in controversy in connection with his meal period claim.

***2. Improper Rest Periods***

36. The Complaint alleges that Plaintiff and Class Members did not receive rest breaks. (Compl. ¶¶ 74-84.) More specifically, the Complaint asserts "[a]s a matter of Defendants' established company policy, Defendants ***failed to always*** authorize and permit legally compliant rest periods. Defendants did not authorize and permit rest periods for shifts every four hours or major fraction thereof, ***failed to relinquish control over how employees spent their break time***, ***required the members of the Rest Period Class to carry personal cellphones***, prevented the members of the Rest Period Class from taking uninterrupted rest periods, exerted coercion against the taking of legally protected breaks, and/or forbid members of the Rest Period Class from leaving Defendants' facilities." (Compl. ¶ 82, emphasis added.)

37. As explained above, Defendant employed at least 119 individuals for a total of at least 9,077 workweeks from July 1, 2022 to the present with an hourly rate of $26.83 (Calvo Decl. ¶ 5). Assuming five missed rest breaks per workweek, Defendant would owe the putative class approximately **<u>$1,103,309</u>** ($24.31 average hourly rate x 5 missed rest breaks x 9,077 workweeks).

38. Thus, while Defendant completely denies Plaintiff is entitled to recover any rest break premiums, based on the allegations in the Complaint, it is plausible Plaintiff is seeking to recover rest break premiums for all shifts worked by Putative Class Members, which would place over **<u>$1,103,309</u>** in controversy in connection with his rest break claim.

### *3. Overtime*

39. Plaintiff also alleges that Defendant failed to compensate Plaintiff and the Putative Class Members for all overtime hours worked. (Compl. ¶¶ 55-63.) Plaintiff specifically alleges that, "Plaintiff was required by Defendants to ***endure substantial*** off-the-clock work before and after his scheduled shift hours, and during his meal breaks…" (Compl. ¶ 22, emphasis added.) Under Labor Code section 510, overtime work must be compensated at one and one-half times the regular rate of pay for an employee. Estimating that Plaintiff will attempt to recover seven (7) hours of off-the-clock overtime wages for every workweek (estimated at 9,077 for Putative Class Members over the relevant time period (Calvo Decl. ¶ 5) for themselves and the Putative Class Members, and assuming that the Putative Class Members were earning an average of $24.31 per hour, this claim alone places in controversy at least **$2,316,950** ($24.31 x 1.5 overtime rate x 7 hours x 9,077 workweeks).

### *4. Waiting Time Penalties*

40. Plaintiff also alleges Defendant failed to pay Plaintiff and the Putative Class Members who are no longer employed by Defendant all wages due upon termination as required by California Labor Code sections 201 and 202. (Compl. ¶¶ 102-108.) California Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced, up to a maximum of thirty (30) days. Cal. Lab. Code § 203. Given the number of employees whose employment terminated during the time period of July 1, 2022 to the present, which Defendant's America People Director estimates at 50, and with the average hourly rate of $24.31 per hour, this claim places in controversy at least **$291,720** (8 hours/day x $24.31/hour x 30 days x 50).

### *5. Attorneys' Fees*

41. Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid minimum wages, unpaid overtime wages,

waiting time penalties, and failure to reimburse expenses. (Complaint at Relief Requested.) The Court must consider and include these fees and costs in determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

42. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably

assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

43. Thus, while Defendant completely denies Plaintiff is entitled to recover any damages or corresponding attorneys' fees, the Court should consider attorneys' fees of at least **$1,203,382**, a conservative estimate at 25% of the aggregate amount in controversy calculated above in connection with Plaintiff's putative class claims. *See, e.g., Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

44. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (at least **$6,019,110**) surpasses the $5,000,000 jurisdictional threshold required under CAFA, as summarized below:

///

///

| | |
|---|---:|
| Meal Period Premiums | $1,103,309 |
| Rest Break Premiums | $1,103,309 |
| Overtime | $2,316,950 |
| Waiting Time Penalties | $291,720 |
| Attorneys' Fees (25%) | $1,203,382 |
| **Total** | **$6,019,110** |

## VII. NOTICE TO COURT AND ALL PARTIES

45. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal along with all supporting pleadings will be promptly served on Plaintiff and also filed with the Clerk of the Superior Court for the State of California, County of Solano. All procedural requirements for notice under 28 U.S.C. § 1446, therefore, will be followed and satisfied.

## VIII. NO ADMISSION

46. Defendant does not concede in any way that the allegations in the Complaint or any other pleading discussed above are accurate, nor does Defendant concede that Plaintiff is entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.

## IX. CONCLUSION

48. WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Solano to this Court.

DATED: August 17, 2026

**JACKSON LEWIS P.C.**

By: ______________________________

ADAM SIEGEL
MARK MARSENOVIC

Attorneys for Defendant
C & C NORTH AMERICA, INC.
DBA COSENTINO NORTH AMERICA
(erroneously sued as C & C NORTH AMERICA, INC.)

4922-9178-8488, v. 1